**TUANU'UTELE SAI, Claimant**

**v.**

**SONNY LE'I THOMPSON, TIKERI N. THOMPSON, LEANA MISIUAITA, SOFENI VA'ENA, TAGATA A.T. LE'I and POROTESANO T. TUIOLOSEGA, Counter-claimants**

---

**[In re Matai Title LE'I of the Village of Ofu]**

High Court of American Samoa
Land and Titles Division

MT No. 03-98

June 6, 2003

Before KRUSE, Chief Justice, SAGAPOLUTELE, Associate Judge, MAMEA, Associate Judge, and TUPUIVAO, Associate Judge.

Counsel: For Tuanu'utele Sai, *pro se*
For Sonny Le'i Thompson, Charles V. Ala'ilima
For Tikeri N. Thompson, Afoafouvale L.S. Lutu
For Sofeni Va'ena, *pro se*
For Porotesano T. Tuiolosega, *pro se*

OPINION AND ORDER

Tuanu'utele Sai ("Tuanu'u") filed his application to be registered as the holder of the matai title Le'i, attached to the village of Ofu, Manu'a. This in turn triggered a number of objections and counter-claims, under A.S.C.A. § 1.0407; they included that of Sonny L. Thompson ("Sonny"), Tikeri N. Thompson ("Tikeri"), Sofeni Va'ena ("Va'ena"), and

Porotesano T. Tuiolosega ("Porotesano").[1] Following unsuccessful mediation attempts before the Secretary of Samoan Affairs, in accordance with the procedure set out in A.S.C.A. § 43.0302, this litigation ensued.

A.S.C.A. § 1.0409(c) prescribes the law which the High Court must follow in determining which matai title candidate shall be the next registered holder. The enactment reads:

> In the trial of title cases, the High Court shall be guided by the following considerations, in the priority listed:
> (1) the best hereditary right, as to which the male and female descendants are equal in families where this has been customary; otherwise the male descendant prevails over the female;
> (2) the wish of the majority or plurality of those clans in the family as customary in that family;
> (3) the forcefulness, character and personality of the persons under consideration for the title, and their knowledge of Samoan customs; and
> (4) the value of the holder of the title to the family, village, and country.

## 1. Hereditary Right

With respect to hereditary right, the evidence shows: that Tikeri is the son of Le`i Fereti and his degree of hereditary right is 50%; that Va`ena is the grandson of Le`i Moala and his degree of hereditary right is 25%; that candidate Tuanu`u is the great-grandson of Le`i Moala and his degree of hereditary right is 12.5%; that Porotesano Tuiolosega is the third great grandson of Le`i Isumama and his degree of hereditary right is 3.125%; and that candidate Sonny is the fourth great grandson of Le`i E`e and his degree of hereditary right is 1.56%. It follows, therefore, that Tikeri prevails over the other candidates on this issue.

## 2. Wish of The Clans

A number of Le`i family gatherings to address the matai vacancy were held in Ofu beginning with a meeting in 1994. Shortly after the first and inconclusive family meeting, Tuanu`u bolted to the Territorial Registrar's office and offered to register the Le`i title in his name. Notwithstanding, the family further met on the issue and the only emergent consensus that arose at the initial series of meetings was support for either Tuanu`u or Tikeri to hold the title. Rather than

---

[1] By the time of trial, the succession claims of Leana Misiuaita and Tagata A.T. Le`i had been withdrawn.

persisting with the issue until a titleholder was decided upon, the family at a meeting in 1996, merely managed to agree to let Tuanu`u and Tikeri decide between the two of them as to who would be the matai. In effect, the family abdicated its responsibility.

Following this family resolution and after some back and forth between the two leading candidates, Tikeri was eventually offered the title by Tuanu`u. The latter had apparently been offered the `ava cup for another vacant Ofu matai title, Sai. Two things, however, stalled, and eventually thwarted any prospect of the Le`i title being registered in Tikeri's name: first the counter-claims with the office of the Territorial Registrar were not immediately withdrawn, hence the dispute was legally very much alive; second, Tuanu`u's ambitions towards the Sai title were held in abeyance because of unresolved third-party objections.

A subsequent series of the requisite mediation conferences with the Secretary of Samoan Affairs proved to be of no avail. By letter of November 25, 1997, the Secretary certified an irreconcilable dispute, noting the convening of six meetings with the candidates and their failure to reach a settlement. On January 7, 1988, the matter was then referred to the Land and Titles Division in accordance with A.S.C.A. § 1.0409.[2]

On the date of filing with the Court, the Clerk's office prepared and sent out to all the parties, the Court's Notice to File Questionnaire within 30 days, pursuant to T.C.R.L.T. 3. The only parties who complied with the Rule 3 Notice, however, were Tuanu`u, Tagata A.T. Le`i (who has since passed away), and Tikeri. Sonny did not get around to filing his response to Questionnaire until November 5, 2002, Porotesano on March 4, 2003, two days before trial, while Vaena filed only on March 6, 2003, the day of trial itself. (Notwithstanding a caution contained in the Rule 3 notice to comply within the stated time frame or suffer dismissal of claim, there were, inexplicably, no adverse motions to dismiss were filed by anyone).

Ironically, and while the matter remained pending with the Court as a "disputed claim," see A.S.C.A. § 1.0409(a), the candidates who had failed to comply with the Court's Rule 3 notice, took it upon themselves to convene a further meeting, around July 2002, to select a matai. Vaena testified that he had convened and presided at the meeting, and that as

---

[2] On February 3, 1998, a subsequent letter, dated February 2, 1998, from the Secretary of Samoan Affairs was filed with Clerk clarifying that while four of the candidates had stipulated to withdrawing, with a fifth having died, two of the candidates were holding out, and hence the continuing dispute.

the presiding official, he had determined that the meeting had resulted in Sonny's favor.

We find on the evidence that while the Le'i family had met on various occasions to discuss the appointment of a successor matai, the family failed to reach a consensus on any one of party candidates. As previously indicated, the meetings in the late 1990s simply ended with the family effectively abandoning its responsibility to pick a matai. At the same time, the unresolved family impasse with Tuanu'u and Tikeri was never taken back to the family for further deliberation. To confound matters, some of the family elders who were in attendance at the meetings of 1990s had, in the meanwhile, passed on.

As to the gathering convened by Vaena in 2002, all that may be said of this meeting is that it resulted in a settlement concluded only among candidates Vaena, Sonny and then objector/claimant Leama Misiuaita. Indeed, Leama Misiuaita withdrew his candidacy in the looming days of trial to support Sonny, while Vaena quite clearly remained in the litigation not so much for the purpose of actually vying for the title, but for the principal purpose of indicating support for Sonny and to merely establish, for the record, his entitlement. But by the time of this so-called family meeting, the matter of matai succession was already a "disputed" issue squarely before the Court. The Secretary of Samoan Affairs' certification of an irreconcilable dispute, unquestionably gave the court jurisdiction over all the candidates' "disputed claim[s]." *See Ava v. Logoai*, 20 A.S.R.2d 51, 52 (Land & Titles Div. 1992). Therefore, without the stipulation of the other remaining claimants, Tuanu'u, Tikeri, and Porotesano, to Vaena's proposition of a family consensus in favor of Sonny, the asserted outcome of the 2002 meeting appears to ring rather hollow.

We find the 2002 meeting to be nothing less than posturing efforts, with pending litigation in mind, by parties who not only ignored the Court's pre-trial notices but who were simply not in the assembled family's contemplation. Furthermore, we find that the Le'i family did not decide on any one candidate and, hence, no candidate can be said to prevail on this criterion.[3]

3. Forcefulness, Character and Personality, and Knowledge of Samoan Customs

---

[3] In view of our findings, we need not at this time decide on the issue of clan definition and the number of clans in the Le'i family. The only thing really clear on the evidence in this regard, apart from the very apparent fact that the research on family history was very much superficial and wanting, is that there was accord on the evidence suggesting that the Le'i family is compromised of more than one clan.

First, we are satisfied that the candidates are more or less equally versed in Samoan customs; they each live and practice it from day to day. However, in terms of forcefulness, Tuanu'u, Sonny and Tikeri have shown greater gumption and initiative in the manner they have extended their respective educational pursuits beyond the secondary school level. This is more so given the relative hardship of early life in Ofu. Sonny and Tikeri went further to the collegiate level, where each acquired a sound educational foundation that has seen both with good professional careers and leadership roles. Both have also given extensive public service. Sonny retired with the rank of major after twenty-one years of meritorious service with the United States Air Force. Since his return to the Territory, Sonny has worked in the private sector; however, he continues his public service with his involvement with the Territory's various disaster/emergency related programs. Tikeri's career, on the other hand, is and has been with the LBJ Tropical Medical Center, the Territory's only hospital. He is the only nationally licensed pharmacist in American Samoa and his professional certifications have been essential towards the local hospital's ability to purchase and dispense federally regulated medicines. Sonny and Tikeri surpass the other candidates on the consideration of forcefulness.

■ Under the consideration of character and personality, Tikeri impressed most. Against the other candidates, Tikeri appeals to us as a humble, mature, and thoughtful person who has throughout this long drawn out succession ordeal, shown the greatest respect for the family. Too often in matai succession disputes, we recurringly encounter candidate maneuvering, tactics, and strategy motivated solely with individual gain in mind, to the detriment of family preference. For instance, a favored strategy to overcome a perceived adverse family sentiment towards one's candidacy is the unilateral removal of the matai succession issue altogether from the family, in favor of a government resolution, by premature offers to register the title with the Territorial Registrar. *See, e.g., In re Matai Title "Olomua,"* 27 A.S.R.2d 20, 21 (Land & Titles Div. 1994); *In re Matai Title "Misa'alefua,"* 28 A.S.R.2d 106, 109 (Land & Titles Div. 1995). The matter at bar proved to be no exception. When Tuanu'u offered to register the title at the outset, after the family had only met once, he thereby effectively set the family's agenda, in terms of a slate of candidates, and accordingly fettered any further meaningful family discussion. His action opened the door for other family members, who were not even in the family's contemplation (Vaena unabashedly confessed that nobody supported his candidacy) to hop aboard the registration bandwagon in hope for the best.[4] We have

---

[4] It is not lost on us that the Le'i matai title is that of *to'oto'o* or ranking orator from the Manu'a District. As such, its attendant political prestige is not only relevant within the traditional scheme of things but also within the

already alluded to posturing efforts by Vaena, Sonny, and Leama Misiuaita, to advance their concerted agenda even as the issue was before the Court. This agenda was pursued even to the extent of Sonny offering Tikeri the inducement of communal rental income for Tikeri's use if Tikeri would abandon his claim in favor of the latter's succession ambitions.

In Tikeri's case, he was beyond maneuvering, tactics, and strategy. We are satisfied that his purpose throughout this succession process was the advancement of perceived family desire rather than the singular pursuit of his own personal ambitions. Notwithstanding the early upstaging of the family by Tuanu'u's unilateral and impetuous action of taking the matter to the government, Tikeri quietly persevered toward realization of the family's 1996 mandate. (Implementation of that expressed family desire, however, even after Tuanu'u relented, was simply not possible with the outstanding succession counter-claims of family members who were clearly outside the family's choosing.) In this, Tikeri showed judgment and a great deal of patience. Comparatively, he stands out on the considerations of character and personality. We find that Tikeri prevails under this heading.

4. Value to Family, Village, and Country

In terms of value to the village, we rate all of the candidates to be about equal. As to public worth, all the candidates have in their different career choices contributed materially to the general well being of the Territory; however, Sonny and Tikeri's vocational background and experience sets them slightly ahead in this regard. Commensurate with their respective education and training, the public service these candidates have and are rendering is, by comparison, more pronounced in the scheme of things; they each offer a unique expertise. Tikeri's role with the hospital's pharmacy is crucial, just as is Sonny's disaster related planning background and organizational acumen.

■ With regard to the consideration of value to the family, we single out Tikeri. Prior to his going off-island to seek his professional training, Tikeri was very much involved with his late father's administration in the way of *tautua* (traditional service) to both family and matai. He is more familiar with the family and its natural resources. Indeed, he is currently involved with the administration and preservation of family rental income. It follows that a candidate who is more intimately familiar with family members and assets is in the better position to serve the family as matai. Moreover, we are persuaded that Tikeri is by his nature and general disposition the best candidate to lead the Le'i family.

government framework. It is, therefore, a coveted title among family members.

249

We have already alluded to his strong sense of family value—his loyalty to and respect for family regard over his own personal ambitions. With his patience and humility, Tikeri has demonstrated the sort of maturity and *tofa* (judgment) best suited for family leadership.

All things considered, we find that Tikeri also prevails under this fourth criterion.

## Conclusion and Order

On the foregoing, we conclude that Tikeri is qualified to hold the matai title Le`i, attached to the village of Ofu, Manu`a. He prevails on hereditary considerations, as well as on the third, and fourth criteria specified by A.S.C.A. § 1.0409(c).

The Territorial Registrar shall, in accordance with A.S.C.A. § 1.0409(b), register the matai title Le`i in candidate Tikeri N. Thompson.

It is so ordered.